724 S.E.2d 768

**Dr. Joe J. WHITE, Jr., Petitioner Below, Petitioner**

v.

**Joe E. MILLER, Commissioner, West Virginia Division of Motor Vehicles, Respondent Below, Respondent.**

**No. 11–0171.**

Supreme Court of Appeals of West Virginia.

Submitted March 6, 2012.

Decided March 26, 2012.

---

**800**

Carter Zerbe, Esq., David Pence, Esq., Carter Zerbe & Associates, PLLC, Charleston, WV, for the Petitioner.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Senior Assistant Attorney General, Charleston, WV, for the Respondent.

KETCHUM, C.J.:

This case is before this Court upon the appeal of Dr. Joe J. White, Jr., ("White") from the December 13, 2010, order of the Circuit Court of Kanawha County. The order affirmed the decision of the Commissioner of the West Virginia Division of Motor Vehicles to revoke White's license to operate a motor vehicle in this State for six months. The basis of the revocation was the determination of a police officer at a sobriety checkpoint that White was driving while under the influence of alcohol. White denies that he was under the influence of alcohol, challenges

the admissibility of the horizontal gaze nystagmus test as an indicator that he was intoxicated, and challenges the lawfulness of the sobriety checkpoint.

Upon careful examination of the record and the briefs and argument of counsel, this Court is of the opinion that the order of the circuit court affirming the Commissioner's decision to revoke White's license should be reversed. In so ruling, although this Court confirms and clarifies the admissibility of evidence concerning the horizontal gaze nystagmus test as a field sobriety test, we conclude that White is entitled to a new administrative hearing based upon his challenge to the sobriety checkpoint.

Accordingly, the December 13, 2010, order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the administrative level solely on the issue of the lawfulness of the sobriety checkpoint.

## I.

### Factual Background

On July 6, 2007, at 8:22 p.m., White, driving a Toyota Highlander, was stopped by police at a sobriety checkpoint on MacCorkle Avenue in Charleston, West Virginia. White, a 51 year-old medical doctor, had worked ten hours that day at a local hospital. White had not been speeding or driving erratically and was calm and cooperative at the checkpoint. Charleston Police Officer B. Lightner, however, detected the odor of an alcoholic beverage on White's breath and noticed that his eyes were glassy. White was unsteady in stepping out of his vehicle. White informed Officer Lightner that he had consumed four beers over an hour and a half period after leaving the hospital.[1]

Officer Lightner directed White to perform three field sobriety tests: (1) the walk-and-turn test, (2) the one-leg stand test and (3) the horizontal gaze nystagmus test. According to Officer Lightner, White failed all three tests and also failed a preliminary breath

---

1. White explained that he actually drank three 16 ounce cans of beer, the equivalent of four regular size 12 ounce cans of beer.

test.[2] White's secondary chemical test, however, later conducted at the police department, revealed a blood alcohol content of .076, below the statutory limit of .08 in West Virginia. *See, W.Va.Code*, 17C–5A–1 [2004].[3] *See also*, Code of State Rules: 64–10–1. [2005], *et seq.* (concerning methods and standards for chemical tests for intoxication). Moreover, shortly after taking the field sobriety tests, White, whose left leg is about half an inch shorter than his right leg, informed Officer Lightner that he walks with a limp. White's comment about his limp was noted in the Interview section of the police Information Sheet completed that evening. Referring to the walk-and-turn and one-leg stand tests, White subsequently testified that the limp affects his balance.

Officer Lightner placed White under arrest for first offense driving under the influence of alcohol, *W.Va.Code*, 17C–5–2 [2007], and filed a statement to that effect with the Division of Motor Vehicles.[4]

## II.

### Procedural Background

Soon after, White's license to operate a motor vehicle in this State was administratively revoked for six months by the Division of Motor Vehicles. White, represented by counsel, challenged the revocation, and an evidentiary hearing was conducted on April 23, 2008.

2. With regard to the horizontal gaze nystagmus test, the Information Sheet completed by Officer Lightner stated that White failed the test due to: (1) lack of smooth pursuit, (2) distinct nystagmus at maximum deviation and (3) onset of nystagmus prior to 45 degrees.

3. *W.Va.Code*, 17C–5–8(a)(2) [2004], states:

Evidence that there was, at that time, more than five hundredths of one percent and less than eight hundredths of one percent, by weight, of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of alcohol. However, subsection (d) of *W.Va.Code*, 17C–5–8 [2004], permits consideration of "other competent evidence" on the question of whether the person was under the influence of alcohol. We also note *W.Va.Code*, 60–6–24 [1981] (setting forth a chart for the estimation of alcohol in the

Two witnesses for the State testified: Charleston Police Sergeant Shawn Williams and Officer Lightner. Sergeant Williams, the police department's Highway Safety Director, supervised the sobriety checkpoint on July 6, 2007, and testified that the checkpoint was established and conducted pursuant to standardized, predetermined guidelines. The location for the checkpoint, for example, was selected on the basis of traffic volume, accident data and alcohol related arrests. The location was also selected on the basis of visibility in relation to motorists and police officers and the availability of nearby parking areas. Williams further testified that the media was advised of the checkpoint in advance by mass e-mail. Moreover, Williams stated that a section of Kanawha Boulevard, in Charleston, was selected as an alternate route for drivers seeking to avoid the checkpoint.[5]

Officer Lightner testified that he had been trained to administer field sobriety tests, as were other police officers in this State, pursuant to the manual issued by the National Highway Traffic Safety Administration ("NHTSA"). Section VIII of the manual is entitled "Concepts and Principles of the Standardized Field Sobriety Tests" and includes instructions for the walk-and-turn test, the one-leg stand test and the horizontal gaze nystagmus test. Officer Lightner testified that he explained the horizontal gaze nystagmus test to White and explained, and demonstrated, the walk-and-turn and one-leg

blood by number of drinks in relation to body weight).

4. The record before this Court does not include information concerning the outcome of White's arrest which would have involved criminal proceedings separate from the revocation of his driver's license.

5. As discussed *infra*, Sergeant Williams' testimony concerning the manner in which the sobriety checkpoint was established and conducted resulted from White's prehearing notice that the legality of the checkpoint would be challenged. *See*, Code of State Rules: § 91–1–3.4.1. [2005] (Division of Motor Vehicles), and § 91–1–3.5.3. [2005] (Division of Motor Vehicles); syl. pt. 2, *Carte v. Cline, Comm'r*, 194 W.Va. 233, 460 S.E.2d 48 (1995) (notice of a challenge to the validity of a sobriety checkpoint shall be given prior to the administrative revocation hearing).

stand tests to him. White failed all three tests, as well as the preliminary breath test.

White objected to the submission by the State of the field sobriety tests and the results thereof on the ground that a proper foundation for admission of that evidence had not been established. In addition, he asserted that the horizontal gaze nystagmus test should not be considered because it lacked scientific reliability. White's objections were overruled by the hearing examiner. Moreover, White asserted, unsuccessfully, that his cross-examination concerning the validity of the sobriety checkpoint was rendered ineffective because he had not been provided with a copy of the standardized, predetermined guidelines referred to by Sergeant Williams.

During his subsequent testimony at the hearing, White denied driving while under the influence of alcohol and stated that his limp and altered sense of balance affected the way he stepped out of the Toyota Highlander as well as his performance on the walk-and-turn and one-leg stand tests. Moreover, emphasizing his medical training, White testified that nystagmus of the eyes can result from other causes, such as fatigue.

By decision effective May 11, 2009, the Commissioner of the Division of Motor Vehicles revoked White's license to operate a motor vehicle in West Virginia for six months. The Commissioner stated:

> The record will reflect that Sergeant Shawn Williams gave detailed testimony as to the DUI Sobriety Checkpoint being set up in accordance with the predetermined guidelines. * * * [T]he totality of [Officer Lightner's] observations regarding the Respondent, including the non-structured detection clues and structured field sobriety tests, prove by a preponderance of the evidence that he operated a motor vehicle while under the influence of alcohol.[6]

White appealed the decision pursuant to the contested cases provision of the West Virginia Administrative Procedures Act. W.Va.Code, 29A-5-4 [1998]. See, W.Va. Code, 17C-5A-2(a), (q) [2004]. The circuit court, however, relying on the testimony of Officer Lightner and Sergeant Williams before the Commissioner, entered an order on December 13, 2010, which affirmed the six month revocation. The appeal to this Court followed pursuant to W.Va.Code, 29A-6-1 [1964].

## III.

### Standards of Review

■ The primary standard of review in this matter is found in *Muscatell v. Cline, Comm'r*, 196 W.Va. 588, 474 S.E.2d 518 (1996), a driver's administrative license revocation case, syllabus point 1 of which holds:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) [concerning contested cases under the West Virginia Administrative Procedures Act] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

*In accord,* syl. pt. 1, *Ullom v. Miller, Comm'r*, 227 W.Va. 1, 705 S.E.2d 111 (2010). Moreover, *W.Va.Code*, 29A-5-4(g) [1988], of the Administrative Procedures Act provides that a reversal is warranted, *inter alia,* where the administrative decision is arbitrary and capricious.

■ Also worth noting is the underlying preponderance of the evidence standard pertaining to administrative revocation proceedings. That standard is set forth in *Albrecht v. Department of Motor Vehicles*, 173 W.Va. 268, 314 S.E.2d 859 (1984), syllabus point 2 of which holds:

> Where there is evidence reflecting that a driver was operating a motor vehicle upon

---

6. *W.Va.Code*, 17C-5A-1 [2004], mandates administrative license revocation for driving while under the influence of alcohol *or* driving while having a blood alcohol concentration of .08 or more. *See,* syl. pt. 4, *Coll v. Cline, Comm'r*, 202 W.Va. 599, 505 S.E.2d 662 (1998) (*W.Va.Code*, 17C-5A-1, does not require a chemical sobriety test to prove that a motorist was driving under the influence of alcohol for purposes of an administrative revocation of his or her driver's license.). Thus, White's secondary chemical test result of .076 was not an absolute defense in the revocation proceeding.

a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

*In accord,* syl. pt. 3, *Groves v. Cicchirillo,* 225 W.Va. 474, 694 S.E.2d 639 (2010). In that regard, we also note that the rules of evidence, as applied in civil actions in the circuit courts of this State, are to be followed in administrative license revocation hearings conducted by the Division of Motor Vehicles. *W.Va.Code,* 29A–5–2(a) [1964]; Code of State Rules: § 91–1–3.9.2. [2005].

## IV.

### Discussion

White contends that the State failed to prove that he operated his vehicle while under the influence of alcohol. Moreover, he contends that the Commissioner's revocation of his license was arbitrary and capricious. In particular, White contends that the horizontal gaze nystagmus ("HGN") test should not have been considered by the Commissioner because the test lacks scientific reliability. He asserts, for example, that the test: (1) is highly subjective when administered by police officers, (2) cannot be used to estimate a driver's blood alcohol concentration, (3) may falsely indicate intoxication where blood alcohol concentration is minimal, and (4) may falsely indicate intoxication where the nystagmus results from other causes, such as fatigue, caffeine or neurologic conditions. This Court first addresses White's challenge to the HGN test. Thereafter, we address White's challenge to the sobriety checkpoint.

### A.

### The Horizontal Gaze Nystagmus Test is Admissible to Show Intoxication

In *State v. Barker,* 179 W.Va. 194, 366 S.E.2d 642 (1988), this Court reversed a criminal conviction of third offense driving under the influence of alcohol where the State failed to introduce evidence showing the scientific reliability of the test and where the arresting officer had used the test to estimate the driver's specific blood alcohol content. The opinion in *Barker* observed:

Even if the HGN test were found to be reliable, and its results admissible, we would be left with the question of whether estimates of blood alcohol content based on a driver's performance of the HGN test are admissible. The HGN test is a field sobriety test. A police officer's testimony as to a driver's performance on other field sobriety tests like finger-to-nose or walking the line, is admissible at trial as evidence that the driver was under the influence of alcohol. From the evidence presented, we are not convinced that the HGN test should be entitled to any more evidentiary value than other field sobriety tests.

179 W.Va. at 198, 366 S.E.2d at 646. Accordingly, syllabus point 2 of *Barker* holds: "Estimates of blood alcohol content based on the Horizontal Gaze Nystagmus test are inadmissible as evidence in a criminal trial."

In at least 23 cases since *Barker,* this Court has noted the use of the horizontal gaze nystagmus test, primarily in license revocation cases where the test was used in conjunction with other field sobriety tests.[7]

---

7. *Sims v. Miller, Comm'r,* 227 W.Va. 395, 398 n. 3, 709 S.E.2d 750, 753 n. 3 (2011); *Ullom, supra,* 227 W.Va. at 6, 705 S.E.2d at 116; *Cain v. Division of Motor Vehicles,* 225 W.Va. 467, 469 n. 2, 694 S.E.2d 309, 311 n. 2 (2010); *Groves, supra,* 225 W.Va. at 476, 694 S.E.2d at 641; *Strick v. Cicchirillo, Comm'r,* 224 W.Va. 240, 241, 683 S.E.2d 575, 576 (2009); *Carpenter v. Cicchirillo, Comm'r,* 222 W.Va. 66, 68, 662 S.E.2d 508, 510 (2008); *State v. Doonan,* 220 W.Va. 8, 11, 640 S.E.2d 71, 74 (2006); *Carroll v. Stump, Comm'r,* 217 W.Va. 748, 750, 619 S.E.2d 261, 263 (2005); *Lilly v. Stump, Comm'r,* 217 W.Va. 313, 315, 617 S.E.2d 860, 862 (2005); *Hanson v. Miller, Comm'r,* 211 W.Va. 677, 678 n.

2, 567 S.E.2d 687, 688 n. 2 (2002); *State v. Dilliner,* 212 W.Va. 135, 137, 569 S.E.2d 211, 213 (2002); *Coffman v. Division of Motor Vehicles,* 209 W.Va. 736, 738 n. 3, 551 S.E.2d 658, 660 n. 3 (2001); *State v. Davisson,* 209 W.Va. 303, 305 n. 1, 547 S.E.2d 241, 243 n. 1 (2001); *Coll, supra,* 202 W.Va. at 602, 505 S.E.2d at 665; *Carte v. Cline, Comm'r,* 200 W.Va. 162, 164, 488 S.E.2d 437, 439 (1997); *State v. Cheek,* 199 W.Va. 21, 24, 483 S.E.2d 21, 24 (1996); *Muscatell, supra,* 196 W.Va. at 595, 474 S.E.2d at 525; *Dean v. Department of Motor Vehicles,* 195 W.Va. 70, 73, 464 S.E.2d 589, 592 (1995); *Carte, supra,* 194 W.Va. at 235, 460 S.E.2d at 50; *Hill v. Cline,*

In *Dean v. Department of Motor Vehicles, supra*, this Court affirmed the administrative revocation of a driver's license to operate a motor vehicle. The record included evidence that: (1) the vehicle had crossed the center line, (2) the driver admitted that he had consumed beer, (3) there was the odor of an alcoholic beverage on the driver's breath and (4) the driver failed the horizontal gaze nystagmus test administered by the arresting officer. No other field sobriety tests were given, and the record contained no results of any chemical sobriety tests. In upholding the revocation, this Court, in *Dean*, commented as follows with regard to the driver's assertion that head injuries had caused him to fail the HGN test: "[A]lthough the appellant asserts that his head injuries could have negated the validity of the HGN test, the Commissioner had the opportunity to consider the evidence of that assertion and rejected the assertion." 195 W.Va. at 73, 464 S.E.2d at 592. *See, Boley v. Cline, Comm'r*, 193 W.Va. 311, 456 S.E.2d 38 (1995) (administrative revocation upheld by this Court based on evidence that the vehicle was weaving, the smell of beer emanated from the driver and the HGN test indicated that the driver was under the influence of alcohol).

The distinction, suggested in *Dean*, between the admissibility of the horizontal gaze nystagmus test in a revocation proceeding and the weight to be afforded that evidence was subsequently addressed in *Muscatell v. Cline, Comm'r, supra*. In *Muscatell*, the driver asserted that the HGN test should not have been considered at the administrative hearing because the scientific reliability of the test had not been accepted under West Virginia law. However, this Court concluded:

> *Barker* allows the admission of the results of the HGN test as evidence the driver was under the influence of alcohol. We find

nothing in the record that indicates Trooper Brown attempted to estimate [the driver's] blood alcohol content with the HGN test. There is no indication the officer gave the HGN test any greater value than any of the other field sobriety tests he administered. * * * Trooper Brown's testimony regarding his administration of the HGN test and his conclusions from it may be properly considered by the trier of fact subject to the limitations imposed by *Barker* and *Boley*.

196 W.Va. at 595, 474 S.E.2d at 525.

This Court, however, has not been completely unanimous in this area of the law. In *State v. Dilliner*, 212 W.Va. 135, 569 S.E.2d 211 (2002), this Court reversed a conviction of third offense driving under the influence of alcohol and remanded the case for a new trial. Although it was noted that a horizontal gaze nystagmus test had been administered to the driver, the opinion in *Dilliner* solely concerned the advisability of submitting special interrogatories to juries in criminal cases and the admissibility of intoxilyzer or breathalyzer inspection records. In a lengthy dissent, however, Justice Starcher opined that, although HGN observations may be admissible to show probable cause of intoxication, HGN evidence is not admissible, under *Barker*, to show that a person actually drove his or her motor vehicle while under the influence of alcohol, "unless there is specific proof using expert testimony of the scientific reliability of the HGN evidence in the particular case to make such a showing." 212 W.Va. at 148, 569 S.E.2d at 224. *See also, State v. Ferrell*, 184 W.Va. 123, 138 n. 4, 399 S.E.2d 834, 849 n. 4 (1990), wherein Justice Miller, dissenting, stated in passing that *Barker* rejected the HGN test as appropriate evidence.[8]

---

Comm'r, 193 W.Va. 436, 438, 457 S.E.2d 113, 115 (1995); *Boley v. Cline, Comm'r*, 193 W.Va. 311, 314, 456 S.E.2d 38, 41 (1995); *Belknap v. Cline, Comm'r*, 190 W.Va. 590, 591, 439 S.E.2d 455, 456 (1993); *Cunningham v. Bechtold, Comm'r*, 186 W.Va. 474, 476 n. 1, 413 S.E.2d 129, 131 n. 1 (1991).

**8.** Although *Barker* is classified in *Horizontal Gaze Nystagmus Test: Use In Impaired Driving Prose-*

cutions, annot., 60 A.L.R.4th 1129 (2011), as requiring expert testimony, *Barker*, "by implication," and *Muscatell* are both classified in the annotation as authority to the effect that testimony concerning the HGN test is admissible "to establish unquantified inference that suspect was under influence of alcohol." Supplement at 96, 109.

Among the numerous decisions from other jurisdictions reviewed by this Court, the recent opinion of the Supreme Court of Illinois in *People v. McKown*, 236 Ill.2d 278, 338 Ill.Dec. 415, 924 N.E.2d 941 (2010), is particularly helpful. In *McKown*, the Illinois court thoroughly addressed the issues surrounding horizontal gaze nystagmus testing, including the types and causes of nystagmus, the validity of a failed HGN test as an indicator of alcohol impairment, standards to be observed and the jurisprudence of other States. Upon an analysis of the literature on the subject, the *McKown* court determined:

First, alcohol and CNS [central nervous system]-depressant drugs affect the neural centers in the brain that control eye movements, as well as other centers of the brain. Second, HGN correlates highly with both an elevated blood-alcohol concentration and with cognitive impairment. Third, an individual may fail the HGN test by showing 4 or more clues despite a blood-alcohol concentration below the legal limit for driving. Such a person may or may not be impaired for driving. Fourth, to be a reliable indicator of alcohol consumption, HGN field testing must be performed in accordance with the NHTSA [National Highway Traffic Safety Administration] protocol. Fifth, police officers can be trained to distinguish HGN due to consumption of alcohol or other substances from some other common forms of nystagmus.

236 Ill.2d at 298, 338 Ill.Dec. 415, 924 N.E.2d at 952.

Concluding, moreover, that HGN testing is generally accepted in the relevant scientific fields, the Court in *McKown* held that evidence of HGN test results is admissible "for the purpose of proving that a defendant may have consumed alcohol and may, as a result, be impaired." 338 Ill.Dec. 415, 924 N.E.2d

at 955. However, the Illinois court explained:

A failed HGN test is relevant to impairment in the same manner as the smell of alcohol on the subject's breath or the presence of empty or partially empty liquor containers in his car. Each of these facts is evidence of alcohol consumption and is properly admitted into evidence on the question of impairment.

236 Ill.2d at 302–03, 338 Ill.Dec. 415, 924 N.E.2d at 955.

Finally, the Supreme Court of Illinois, in *McKown*, held that evidence of HGN field-sobriety testing, "when performed according to the NHTSA protocol by a properly trained officer," is admissible to show that the defendant likely consumed alcohol and may have been impaired. 236 Ill.2d at 306, 338 Ill.Dec. 415, 924 N.E.2d at 957. *See, Barker, supra,* (noting that, in an Arizona case, the State presented research done for NHTSA as a factor supporting HGN testimony). 179 W.Va. at 198 n. 9, 366 S.E.2d at 646 n. 9.[9]

In *State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155 (2007), the Supreme Court of Ohio held: "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." 113 Ohio St.3d. at 153, 863 N.E.2d at 160. Moreover, the Supreme Court of Nebraska, in *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000), concluded that, when the HGN test is given in conjunction with other field sobriety tests, "the results are admissible for the limited purpose of establishing that a person has an impairment which may be caused by alcohol." 258 Neb. at 985, 607 N.W.2d at 204.

 This Court finds those authorities persuasive and consistent with the conclu-

---

9. Interestingly, the NHTSA standards are recognized by the United States Army with regard to driving under the influence cases within its purview. As 32 C.F.R. § 634.36(b) [2011], states:

When a law enforcement officer reasonably concludes that the individual driving or in control of the vehicle is impaired, field sobriety tests should be conducted on the individual. The DD Form 1920 may be used by law en-

forcement agencies in examining, interpreting, and recording results of such tests. Law enforcement personnel should use a standard field sobriety test (such as one-leg stand or walk and turn) *horizontal gaze nystagmus tests as sanctioned by the National Highway Traffic and Safety Administration,* and screening breath-testing devices to conduct field sobriety tests. (emphasis added)

sions foreshadowed in our prior case law. Accordingly, this Court holds that the horizontal gaze nystagmus test is a field sobriety test, and a driver's performance on the test is admissible as evidence that the driver may have consumed alcohol and may, therefore, be impaired. The results of the horizontal gaze nystagmus test are entitled to no greater weight than other field sobriety tests such as the walk-and-turn test and the one-leg stand test. Furthermore, we hold that upon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test, and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver.

■ Finally, this Court holds that a driver's license to operate a motor vehicle in this State cannot be administratively revoked solely and exclusively on the results of the driver's horizontal gaze nystagmus test. Rather, additional evidence in conjunction with the horizontal gaze nystagmus test is required for revocation: for example, the results of other field sobriety tests; the results of a secondary chemical test; whether the vehicle was weaving on the highway; whether the driver admitted consuming an alcoholic beverage; whether the driver exhibited glassy eyes or slurred speech; and/or whether the odor of an alcoholic beverage was detected.[10]

■ In so holding, we confirm, as indicated in *Barker*, that the horizontal gaze nystagmus test cannot be used to estimate a driver's blood alcohol concentration.

Here, the record includes Section VIII of the manual issued by the National Highway Traffic Safety Administration. Section VIII is entitled "Concepts and Principles of the Standardized Field Sobriety Tests" and includes instructions for administering the walk-and-turn test, the one-leg stand test and the horizontal gaze nystagmus test. Officer Lightner, on cross-examination, identified Section VIII as the source of his training in field sobriety testing. He testified that, although he provided White with an explanation and demonstration, White failed the walk-and-turn test in several respects, such as starting the test too early and stepping off the line, and failed the one-leg stand test by swaying and putting his foot down too soon. Denying that he was under the influence of alcohol, White contested the import of those tests by emphasizing the shortness of his left leg and by testifying that he was fatigued and nervous. With regard to the horizontal gaze nystagmus test, Officer Lightner testified that he explained the test and obtained White's assurance that White had no medical conditions that would have prevented the test from being conducted. Officer Lightner testified that White failed the HGN test (*see* n. 2, *supra* ) but conceded on cross-examination that nystagmus can result from other factors, such as fatigue or caffeine. Moreover, Officer Lightner acknowledged during cross-examination that Section VIII of the NHTSA manual states that, to be valid, field sobriety tests must be administered in the prescribed, standardized manner.

Consequently, in terms of the field sobriety tests, questions of fact concerning whether White drove a motor vehicle while under the influence of alcohol were left to be resolved by the Commissioner.

■ In view of the principles discussed in this opinion, this Court concludes that no error occurred in this case with regard to the horizontal gaze nystagmus test. The HGN test was not used to estimate White's blood-alcohol concentration. Rather, the HGN test results were simply an outward sign that White may have been intoxicated. Moreover, the HGN evidence was not an isolated factor in the administrative revocation of White's license. As in *Dean* and *Boley*, *supra*, other factors were present, such as, in

---

**10.** The supplemental brief filed by the Commissioner indicates that, currently, "HGN evidence is rarely relied upon in isolation."

this case, the other field sobriety tests and the admission of White that he had consumed an alcoholic beverage. Accordingly, White's challenge to the horizontal gaze nystagmus test is without merit, and we find that, when considering all the evidence presented to the Commissioner, there was sufficient proof to establish by a preponderance of the evidence that White operated his motor vehicle while under the influence of alcohol. This Court, however, must also address the lawfulness of the sobriety checkpoint. If the stop at the sobriety checkpoint was unlawful, the evidence gathered at the checkpoint may have been unlawfully obtained and, therefore, would need to be excluded from the evidence before the Commissioner.

**B.**

**The Sobriety Checkpoint**

As stated above, Sergeant Williams, the police department's Highway Safety Director, supervised the sobriety checkpoint at which White's vehicle was stopped. It is undisputed that White provided timely, prehearing notice that the legality of the checkpoint would be challenged at the administrative revocation hearing. Sergeant Williams was, therefore, on notice to be prepared at the hearing to provide evidence concerning the manner in which the sobriety checkpoint was established and conducted.

Williams testified before the Division of Motor Vehicles that the MacCorkle Avenue location was selected on the basis of traffic volume, accident data and alcohol related arrests. The location was also selected on the basis of visibility in relation to motorists and police officers and the availability of nearby parking areas. Williams further testified that the media was advised of the checkpoint, in advance, by mass e-mail. Moreover, Williams stated that a section of Kanawha Boulevard, in Charleston, was se-

lected as an alternate route for drivers seeking to avoid the checkpoint.

The principal authority in this State concerning sobriety checkpoints is *Carte v. Cline*, 194 W.Va. 233, 460 S.E.2d 48 (1995). *Carte* involved a driver who was stopped at a sobriety checkpoint and arrested for operating a motor vehicle while under the influence of alcohol. Challenging the administrative revocation of his license, the driver asserted, *inter alia*, that the State Police failed to comply with standard operating procedures when conducting the checkpoint.

In *Carte*, this Court upheld the constitutionality of sobriety checkpoints insofar as the checkpoints are conducted within unintrusive, predetermined operational guidelines. This Court noted, however, that, in the circumstances before it, the record was incomplete and that there was no basis to determine whether there was compliance with police guidelines. Accordingly, the license revocation was reversed, and the case was remanded to the administrative level for further proceedings. Syllabus points 1 and 2 of *Carte* hold:

1. Sobriety checkpoint roadblocks are constitutional when conducted within predetermined operational guidelines which minimize the intrusion on the individual and mitigate the discretion vested in police officers at the scene.

2. A person who wishes to challenge official compliance with and adherence to sobriety checkpoint operational guidelines shall give written notice of that intent to the commissioner of motor vehicles prior to the administrative revocation hearing which is conducted pursuant to W.Va.Code § 17C–5A–2.

Syl. pt. 2, *State v. Sigler*, 224 W.Va. 608, 687 S.E.2d 391 (2009); *State v. Legg*, 207 W.Va. 686, 695 n. 11, 536 S.E.2d 110, 119 n. 11 (2000).[11] *See also*, syl. pt. 5, *State v. Frisby*, 161 W.Va. 734, 245 S.E.2d 622 (1978), *cert.*

11. *See, Validity of Police Roadblocks or Checkpoints For Purpose of Discovery of Alcoholic Intoxication–Post–Sitz Cases*, annot., 74 A.L.R.5th 319 (1999). *Sitz* in the title is a reference to *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), wherein the Supreme Court of the United

States held that highway sobriety checkpoints do not *per se* violate the Fourth Amendment of the Constitution of the United States. In the annotation, *Carte v. Cline* is included, in § 6, as among cases which have held or recognized that "roadblocks must be carried out pursuant to a previously established and neutral plan."

*denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 87 (1979) (Routine checks for the enforcement of driver and vehicle licensing and registration laws must be done according to some non-discriminatory, random, pre-conceived plan.).

In the case at bar, White provided the required advance notice that the MacCorkle Avenue checkpoint would be challenged.[12] However, although Sergeant Williams testified that the checkpoint was established and conducted pursuant to standardized, predetermined guidelines, no guidelines were provided to White, despite White's repeated requests, or submitted to the Commissioner at the administrative hearing. In fact, Officer Lightner, who conducted the case on behalf of the State, objected when White's counsel asked to be "provided copies of the operational guidelines and the operational plan with respect to checkpoints." Instead, the record indicates that, during the administrative hearing, the officers provided White with a one-page list of "talking points" written to assist the officers with their testimony concerning the checkpoint on MacCorkle Avenue.

In his petition filed in this Court, White describes the consequences of not receiving the standardized, predetermined guidelines: "By refusing to submit a copy of the predetermined guidelines, the State denied Petitioner an opportunity to challenge

and establish that the DUI checkpoint was not operated according to those guidelines and/or to impeach Sgt. Williams." One matter in controversy during the administrative hearing, for example, was whether Sergeant Williams' e-mail to the media concerning the MacCorkle Avenue checkpoint sufficiently alerted motorists, in compliance with police guidelines, that the designated alternative route would be along Kanawha Boulevard. Without the standardized, predetermined guidelines, such issues cannot be resolved. Therefore, the finding of the Commissioner that Sergeant Williams set up the checkpoint in accordance with standardized guidelines is clearly wrong.[13] Syllabus point 6 of *Muscatell, supra,* holds:

Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not select one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

*In accord,* syl. pt. 1, *Choma v. Division of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001).

## V.

### Conclusion

Upon all of the above, this Court concludes that White's challenge to the horizontal gaze

---

**12.** Pursuant to Code of State Rules: § 91–1–3.4.1 [2005] (Division of Motor Vehicles):

Any person who intends to challenge official compliance with and adherence to sobriety checkpoint operational guidelines shall notify the Commissioner of his or her intent in writing, either in person or by mail to the Commissioner in Charleston, West Virginia, at least ten (10) days prior to the hearing date or those matters cannot be challenged.

*See,* Code of State Rules: § 91–1–3.5.3 [2005] (Division of Motor Vehicles), stating that, if a person wishes to challenge the legality of a sobriety checkpoint, the person shall notify the Commissioner as prescribed in § 3.4.

**13.** This Court does not reach the question of whether judicial notice should have been taken of the standardized, predetermined guidelines for sobriety checkpoints referred to by Sergeant Williams. No such guidelines were submitted in this case; nor is there any indication in the record that such guidelines were ever reviewed

during the proceedings below. Moreover, the parties have not shown that standardized, predetermined guidelines for sobriety checkpoints appear in any statutory or rule provision in this State. Finally, although a number of NHTSA sobriety checkpoint guidelines are summarized in a 1984 opinion of the West Virginia Attorney General concerning the constitutionality of sobriety checkpoints [Op. Att'y Gen. 5, 8–10 (Dec. 27, 1984)], those guidelines are similar, but somewhat different, from the policy and procedures of the West Virginia State Police concerning sobriety checkpoints set forth in *Carte v. Cline.* The question of judicial notice, therefore, is not appropriately before this Court. The contested cases article of the Administrative Procedures Act states as follows in *W.Va.Code,* 29A–5–2(d) [1964]: "Agencies may take notice of judicially cognizable facts. All parties shall be notified either before or during hearing, or by reference in preliminary reports or otherwise, of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed."

nystagmus test is without merit. However, the December 13, 2010, order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the administrative level, as in *Carte,* solely on the issue of White's challenge to the lawfulness of the sobriety checkpoint established and conducted on MacCorkle Avenue on July 6, 2007.

Reversed and Remanded.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

Justice WORKMAN concurs, in part, and dissents, in part, and reserves the right to file a concurring and dissenting opinion.

Justice BENJAMIN disqualified.

DAVIS, J., concurring:

I agree fully with the majority opinion in this case. I haven chosen to write separately merely to impress that, while the opinion does announce new points of law pertaining to the horizontal gaze nystagmus field sobriety test (hereinafter referred to as the "HGN test"), in practical effect the opinion does not change current practice or impose any additional burden on law enforcement officers in this state.

Indeed, the new syllabus points serve to reinforce principles that have been discussed or alluded to in earlier opinions of this Court. By clarifying and elevating earlier comments of this Court, the new points of law will actually provide a set of guidelines for law enforcement officials to follow when they are called to testify in license revocation proceedings. By following these guidelines, law enforcement officers can ensure that the evidence they collect will be properly considered by the relevant tribunal, thereby bolstering their cases against accused motorists. Specifically, new Syllabus point one of the majority opinion serves two basic functions: (1) to make clear that the HGN test is admissible evidence that is relevant to the issue of whether a driver may have consumed alcohol, and (2) to clarify that the HGN test is entitled to no greater weight than other field sobriety tests. New Syllabus point two sets forth the items about which an officer should be expected to testi-

fy, thus aiding the officer to fully prepare for an administrative proceeding. New Syllabus point three reminds officers that they must have evidence of impaired driving *in addition* to HGN test results, again instructing officers on what evidence is needed to support a license revocation.

The West Virginia State Police is the agency charged with the responsibility of training nearly all of the law enforcement officers of this state. They take seriously their obligation to properly train officers to administer and interpret field sobriety tests. This opinion will aid those officers in making sure the evidence they have collected is properly considered in license revocation proceedings. Accordingly, I respectfully concur.

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's new syllabus points with respect to the admissibility of and commensurate evidentiary limitations on the horizontal gaze nystagmus test as well as its remand of this matter on the issue of the validity of the sobriety checkpoint. However, I dissent to the majority's opinion for its failure to address the inadequacy of the Commissioner's Final Order as pertains to resolution of conflicts in the evidence. More specifically, I find that the Commissioner's wholesale adoption of the overwhelmingly subjective evidence supporting the State's case, without meaningful analysis of the countervailing evidence, to be arbitrary and capricious.

In this case, petitioner White made two assignments of error with regard to the circuit court's affirmation of the Commissioner's Final Order revoking his drivers' license. White asserted that (1) the State failed to prove that he was driving under the influence of alcohol by a preponderance of evidence; and (2) by failing to resolve conflicting evidence, the Commissioner's decision was arbitrary and capricious. The majority's opinion focuses solely on the admissibility of one field sobriety test and the validity of the sobriety checkpoint. With respect to the assignments of error, the majority opinion merely begs the question by stating, without further analysis of the evidence, that "questions of fact

concerning whether White drove a motor vehicle while under the influence of alcohol were left to be resolved by the Commissioner."

In that regard, we have stated that "[t]he obvious and most critical inquiry in a license revocation proceeding is whether the person charged with DUI was actually legally intoxicated." *Carte v. Cline,* 194 W.Va. 233, 460 S.E.2d 48 (1995). Moreover, it is well-settled that

> Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

Syllabus Point 6, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). Further,

> Evidence such as driving error, consumption of alcohol, and poor performance on a field sobriety test *may be* sufficient under a preponderance standard to support an administrative finding by the commissioner of driving while intoxicated. *But where other evidence strongly weighs against such a finding ... the Commissioner's decision cannot arbitrarily disregard that contradictory evidence.*

*Choma v. W. Va. Div. Of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001) (citations omitted)(emphasis added).

In the case *sub judice,* petitioner White elicited evidence from the arresting officer that during his stop at the sobriety checkpoint, he spoke normally, stood normally, walked normally, and was "calm," cooperative and forthright. His eyes were not red, his face was not flushed, and he provided his license and registration to the officer without difficulty. He was stopped as a result of the checkpoint and not as the result of any erratic driving. He denied being under the influence of alcohol and, critically, his blood alcohol content was *below the legal limit* as per the secondary chemical test.

The arresting officer testified that petitioner White failed all three field sobriety tests—

the walk and turn, the one leg stand, and the horizontal gaze nystagmus (HGN) test. The arresting officer conceded that two of the three tests—the walk and turn and the one leg stand—have only a 68% and 65% accuracy rate, respectively. As counsel noted during cross-examination, this obviously means that one-third of all those tested will have an inaccurate result. Petitioner duly and correctly notes that one's performance of the field sobriety tests is also highly dependent upon the precise instructions given by the officer, evidence of which was not elicited by the State at the administrative hearing. Most importantly as to two of the three field sobriety tests, petitioner White introduced medical evidence that one of his legs is one-half an inch shorter than the other. These two tests—the walk and turn and one leg stand—are entirely balance and gait oriented. The arresting officer agreed that the training manual warns that a person with a leg injury will have difficulty completing these tests. Petitioner White explained that his shorter leg affects his center of gravity. The Commissioner dismissed this considerable attack on the reliability of these tests by stating that the petitioner did not advise the officer of his impairment until after the tests were performed. It is difficult to surmise how the timing of when petitioner advised the officer of his impairment has any bearing on whether or not these tests are fair and reliable indicators of this particular petitioner's sobriety. It is entirely reasonable, as the petitioner testified, that he did not anticipate the effect his shorter leg may have on the tests he was to perform until after he performed them. To the extent the Commissioner was suggesting that this explanation was not credible, he certainly did not indicate as much in his Order. As in *Muscatell,* "[w]e have no separate evaluation of the evidence by the hearing examiner who observed the demeanor of the witness on this critical issue before us." 196 W.Va. at 598, 474 S.E.2d at 528.

With respect to the horizontal gaze nystagmus test, the arresting officer conceded that nystagmus can be caused by a variety of other conditions, including but not limited to fatigue. Petitioner White testified that he had worked a "pretty tough" ten-hour day.

Moreover, training materials on administration of the HGN test indicate that strobe lights and traffic passing in close proximity can interfere with the performance of the test. Petitioner White testified that he was facing police cruisers with operating rotating lights on either side of him. The Commissioner made absolutely no mention of this competing evidence.

The above discussion is merely illustrative of the fact that all three field sobriety tests are subjective observance tests, the accuracy of which (even at their most accurate) is subject entirely to the perception and observational skills or shortcomings of the arresting officer. More importantly as pertains to Petitioner White, he presented cogent and substantial evidence undermining the accuracy of each test. Certainly, any one of these counter-arguments to the State's evidence, in isolation, may not be sufficient to overcome the preponderance standard. However, in the face of an *objective* secondary chemical test demonstrating a blood alcohol content *under the legal limit,* it sufficiently calls into question the Commissioner's finding. Where, as here, the Commissioner engages in essentially no analysis of these countervailing arguments, it renders his decision as having the appearance of one that is "so selective and one-sided as to rise to the level of arbitrariness and capriciousness." *Choma* at 259, 557 S.E.2d at 313. This Court's requirement that an agency resolve conflicting issues of fact is not mere window dressing for discussions of more substantive legal issues:

> The purpose is to allow a reviewing court (and the public) to ascertain that the critical issues before the agency have indeed been considered and weighed and not overlooked or concealed. Indeed, a reviewing court cannot accord to agency findings the deference to which they are entitled unless such attention is given to at least the critical facts upon which the agency has acted.

*Muscatell* at 598, 474 S.E.2d at 528.

While I am certainly mindful that "[t]here are no provisions in either W.Va.Code, 17C–5–1 (1981), *et seq.,* or W.Va.Code, 17C–5A–1

(1981), *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license," this Court has also noted that "where a test has been administered, the Commissioner must consider the results of that test in making his or her revocation decision." Syllabus Point 4, *Coll v. Cline,* 202 W.Va. 599, 505 S.E.2d 662, (1998); *Id.* at 610, 505 S.E.2d at 673. I am likewise aware that W.Va.Code § 17C–5–8(a)(2) provides that "[e]vidence that there was, at that time, more than five hundredths of one percent and less than eight hundredths of one percent, by weight, of alcohol in the person's blood is relevant evidence[.]" Deeming this blood alcohol content as "relevant," however, does not require that a blood alcohol content between .05 and .08 to be construed *against* the petitioner. As Justice Neely noted in *State v. Ball,* 164 W.Va. 588, 264 S.E.2d 844 (1980), "W.Va.Code, § 17C–5A–5(c)[1] is, in effect, a definition of intoxication.... In effect, we may say that the logical connection between the proven fact of requisite blood-alcohol content and the presumed fact of intoxication is that the first demonstrates the second." *Id.* at 592–93, 264 S.E.2d at 846–47. If so, then the converse is equally true-a blood alcohol content below the legal limit *does not* presumptively "demonstrate" intoxication and the State must introduce a reliable preponderance of evidence to prove that petitioner was, in fact, under the influence of alcohol. The existence of the presumption that blood alcohol under .05 demonstrates the absence of being under the influence, makes it even more imperative that where a motorist objectively falls in the "grey area" between .05 and .08, the evidence presented by the State should be reliable and compelling, as fully reasoned and articulated by the Commissioner in his Order.

By no means do I suggest that in *any* case where the petitioner's blood alcohol is less than .08, or even in absence of a chemical blood alcohol test, that the State cannot prove that a motorist was under the influence

---

1. At the time *Ball* was decided, W.Va.Code § 17C–5A–5(c) contained the statutory presumption for intoxication now codified in W.Va.Code § 17C–5–8(a)(3).

of alcohol. It is, rather, my opinion that the objective evidence in this case failed to demonstrate that petitioner White was driving under the influence and that, based upon the bare record before us (devoid of credibility determinations or other meaningful resolution of the conflicts in the evidence), the subjective evidence was unreliable as presented. To the extent that the Commissioner did not find the petitioner's attacks on the subjective evidence persuasive or credible, he was obligated under our caselaw to offer a "reasoned and articulate" resolution of those issues and explain the choices he made with respect to the evidence. Syllabus Point 6, *Muscatell*. I find that he did not do so and therefore, the circuit court erred in affirming the Commissioner's license revocation.

Accordingly, I concur, in part, and dissent, in part.