# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Everett Frazier, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 21-0347** (Ohio County 19-C-183)

**Richard Hillberry, II,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner, West Virginia Division of Motor Vehicles, by counsel Janet E. James, appeals the Circuit Court of Ohio County's April 5, 2021, granting respondent's petition for appeal, reversing the order of the Office of Administrative Hearings ("OAH"), and reinstating respondent's driver's license and commercial driver's license. Respondent Richard Hillberry, II, by Elgine Heceta McArdle, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 18, 2013, respondent traveled to Wheeling, West Virginia, after work to attend a wrestling tournament as a coach. Following the tournament, respondent went with friends to a restaurant where respondent reportedly acted as the designated driver while his friend consumed alcohol. At the end of the evening, respondent started the car to allow it to warm up, and he turned off the headlights that had automatically come on when he started the car. Just after midnight on January 19, 2013, his friend joined him in the car, and respondent pulled onto the road where he traveled approximately 300 yards with only his fog lights on. At that point, he turned the headlights on. When he stopped at a red light shortly thereafter, respondent noticed a police officer behind him. After he made a turn, with the headlights on, the officer pulled him over. The officer claimed to smell the "drinker's breath" of the other occupant of the vehicle, and he noticed that respondent had blood shot eyes. According to the circuit court's order, "the arresting officer suspiciously

1

turned off the audio of his body camera during the encounter."[1] Respondent refused to perform any field sobriety tests or a preliminary breath test. The arresting officer, Officer Hronek, placed respondent under arrest and transported him to the Wheeling Police Department.[2] At 12:57 a.m., Officer Hronek read the West Virginia Implied Consent Statement to respondent and gave him a copy. However, respondent refused to submit to the secondary chemical test as requested by the officer. At 1:23 a.m., respondent again refused to perform the secondary chemical test.

On February 8, 2013, the Division of Motor Vehicles ("DMV") issued orders of revocation to respondent for driving under the influence of drugs or alcohol ("DUI") and refusal to submit to the designated secondary chemical test. The DMV contemporaneously issued an order of disqualification of respondent's commercial driver's license ("CDL") for the same offenses. On April 7, 2016, the OAH conducted an administrative hearing, and on July 22, 2019, the OAH entered its final order reversing the DMV's order of revocation and order of disqualification for DUI but upholding the order of revocation and order of disqualification for refusal. Respondent appealed the OAH's affirmation on the grounds of refusal to the Circuit Court of Ohio County.

On April 5, 2021, the circuit court entered its order reversing the OAH's final order as to the revocation and disqualification based upon respondent's refusal to perform the secondary chemical test. In that order, the circuit court found that the only evidence in Officer Hronek's possession when he stopped respondent was that respondent had his fog lights on, as opposed to his headlights, for only 300 yards. The circuit court noted that the DUI was dismissed and that the City of Wheeling paid respondent $7,750 to settle a claim for false imprisonment arising out of the underlying arrest that the OAH claimed to be "lawful" in its July 22, 2019, administrative order. The circuit court found that the administrative order

> modifies the revocation of [respondent's] license finding that insufficient evidence exists to revoke his license; instead, imposing its revocation incident to a lawful arrest. [] Hence, to permit the administrative revocation under these circumstances would be a violation of [respondent's] constitutional rights. Moreover, under West Virginia Code § 29A-5-4(g) (1998), the administrative decision to revoke [respondent's] driver's license after finding that the arrest for DUI was unlawful is a 'clearly unwarranted exercise of discretion' and ' . . . clearly wrong in view of the reliable, probative and substantial evidence on the whole record . . .' thereby meeting the standard of review in this appeal for **REVERSAL**. [] Accordingly, due to the OAH finding that the underlying DUI arrest was unlawful, the decision of the OAH to revoke [respondent's] driver's license is **REVERSED**.

The circuit court concluded that, "[a]s conceded by the OAH in the underlying [o]rder,

---

[1] When respondent's counsel was questioning the officer during the OAH hearing, counsel indicated that the audio was in and out during the approximately twenty-minute exchange. In response to questions regarding that system, the officer testified that the audio is connected to the car dash cam and that signals were often weak, causing the audio to drop out.

[2] Respondent was arrested for DUI 1st offense, driving with no headlights on, and no proof of insurance.

[respondent] was unlawfully arrested for DUI on the night in question as the underlying facts did not amount to probable cause to arrest [respondent]." It went on to find that the officer's actions on the subject night were violative of respondent's constitutional rights, as there was insufficient cause to lawfully arrest respondent for DUI. Accordingly, the circuit court granted respondent's petition for appeal, reversed the OAH's order, and reinstated respondent's driver's license and CDL. Petitioner appeals from that April 5, 2021, order.

> "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996)." Syl. Pt. 1, *Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014).

Syl. Pt. 1, *Frazier v. Bragg,* 244 W. Va. 40, 851 S.E.2d 486 (2020). Further,

> "[i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*" Syl. Pt. 2, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 2, *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015).

On appeal, petitioner sets forth a single assignment of error: the circuit court erred in reversing the revocation and disqualification of respondent's driver's license and CDL on the bases that respondent was not lawfully arrested; the companion criminal matter was dismissed; and he received a settlement for a claim of false imprisonment. Petitioner argues that the circuit court's order subverts the public policy considerations behind the intent of the implied consent statutes by rescinding the revocation for refusal on the grounds that there was not a lawful arrest in this case. Petitioner argues that the court improperly failed to give deference to the OAH's order and failed to realize that probable cause to arrest and lawful arrest can exist even if there is insufficient evidence to show that the driver was DUI. For those reasons, respondent predicates a revocation for refusal on the sufficiency of the evidence for DUI when, in fact, refusal is a stand-alone ground for revocation. Petitioner further contends that the OAH properly found that the investigating officer had probable cause to arrest respondent and that respondent was lawfully arrested. However, respondent refused to take the breath test. According to petitioner, without citing the record, Officer Hronek did not administer field sobriety tests because respondent refused to submit to them, which does not negate the other evidence of DUI.

With regard to a reasonable suspicion for the stop, this Court has set forth the following:

> "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

3

Syl. Pt. 4, *Dale v. Ciccone*, 233 W. Va. 652, 760 S.E.2d 466 (2014). The DUI Information Sheet indicates that the sole reason for the traffic stop was the fact that the officer observed respondent driving with only his fog lights on. According to that form, respondent was not weaving, straddling the center line, breaking erratically, or any of the other things that may indicate that respondent was DUI. When respondent exited the vehicle, the officer observed that he was "normal" while exiting the vehicle, standing, and walking to the roadside. The OAH's factual findings are not in conflict with the information set forth in the DUI Information Sheet. In the OAH's final order, it found that "[n]o observations were made or recorded concerning slurred speech, or any unsteadiness or staggering. There were no alcoholic beverage containers found within the vehicle." Further, before Officer Hronek initiated the traffic stop, respondent recognized that he did not have his headlights on and remedied the problem. Moreover, contrary to petitioner's assertions, the circuit court merely noted that the criminal charge against respondent was dismissed and respondent received a monetary settlement based upon his false imprisonment related to this arrest. The circuit court specifically stated that the dismissal of the criminal action was not binding upon the circuit court in respondent's appeal from the OAH's final order. Thus, there is no indication that the circuit court's partial reversal of the OAH's final order was based upon those actions.

Considering the totality of the circumstances, including respondent's repeated denials of the consumption of alcohol on the night in question, we find that the circuit court did not err in finding that "to permit the administrative revocation under these circumstances would be a violation of [respondent's] constitutional rights." For these reasons, we affirm the circuit court's partial reversal of the OAH's final order and the reversal of the revocation of respondent's driver's license and disqualification of his CDL.

Affirmed.

**ISSUED:** May 31, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice William R. Wooton

**DISSENTING AND WRITING SEPARATELY:**

Justice Tim Armstead

**NOT PARTICIPATING:**

Justice C. Haley Bunn

Justice Armstead dissenting:

The OAH determined that Respondent was lawfully arrested for driving under the

4

influence of alcohol.  The OAH's order notes that the traffic stop was initiated because Respondent was driving at night without his headlights on; that the arresting officer detected the odor of alcohol coming from Respondent; and that Respondent's eyes were glassy and bloodshot.  Respondent refused to perform any field sobriety or preliminary breath tests.  The officer then placed him under arrest and transported him to the police station.  The officer read the West Virginia Implied Consent Statement to Respondent and gave him a copy.  Respondent refused to submit to the secondary chemical test.  While the OAH ultimately determined that the evidence was not sufficient to establish that Respondent was DUI, it also concluded that Respondent unlawfully refused to submit to the secondary breath test and upheld the DMV's revocation on that basis.

The OAH is required to make a finding that an arrest for DUI was lawful.  "To be lawful, the arrest must be supported by probable cause." *Reed v. Pompeo*, 240 W. Va. 255, 262, 810 S.E.2d 66, 73 (2018).  This Court has held: "Probable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed." Syl. Pt. 2, in part, *State v. Rahman*, 199 W. Va. 144, 483 S.E.2d 273 (1996).  Applying the probable cause standard to this case, it is clear that the OAH's ruling that the officer had probable cause to arrest Respondent for DUI is supported by substantial evidence.  The OAH assessed the totality of the circumstances surrounding the arrest which included 1) Respondent driving at night without his headlights on; 2) Respondent's glassy, bloodshot eyes, and 3) the odor of alcohol detected on his breath. We have previously held that glassy eyes and the odor of alcohol are relevant factors in an administrative hearing concerning a driver's license revocation. *See* Syl. Pt 3, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).  Based on the totality of the circumstances, the officer had probable cause to believe that Respondent was DUI when he made the arrest.

In reversing the OAH's ruling, the circuit court misstated the OAH's findings and asserted that the OAH concluded that Respondent "was *unlawfully* arrested for DUI."  The OAH did not make such a finding.  The circuit court clearly failed to distinguish between the OAH's two findings: 1) Respondent was lawfully arrested for DUI and refused to submit to a secondary breath test; and 2) the evidence did not establish that Respondent was DUI.  By misstating the OAH's finding on whether Respondent was lawfully arrested, the circuit court has substituted its judgment for that of the OAH by concluding that Respondent was not lawfully arrested.  Based on this faulty conclusion, the circuit court ruled that the OAH erred by upholding the revocation based on Respondent's refusal to submit to the secondary chemical test.  The circuit court's ruling was erroneous and is not supported by the evidence in the record.

This Court has stated that "[s]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations." Syl. Pt. 1, in part, *Cahill v. Mercer County Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).  Because the arrest was lawful, the OAH correctly determined that Respondent violated West Virginia Code § 17C-5-4 (2020)[3] by refusing to submit to the secondary chemical test.  The circuit

---

[3] It provides, in relevant part:

(Continued . . .)

court improperly reversed this ruling by substituting its judgment for that of the OAH on the issue of whether Respondent was lawfully arrested.

Based on all of the foregoing, I dissent from the majority's ruling affirming the circuit court. I would have reversed the circuit court's ruling and reinstated the OAH's order of revocation based on the undisputed fact that Respondent failed to submit to the secondary breath test in violation of West Virginia Code § 17C-5-4.

---

(a) Any person who drives a motor vehicle in this state is considered to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood or breath to determine the alcohol concentration in his or her blood, or the concentration in the person's body of a controlled substance, drug, or any combination thereof.

. . . .

(e) Any person to whom a preliminary breath test is administered who is arrested shall be advised verbally and given a written statement advising him or her of the following:

(1) That the person's refusal to submit to the secondary chemical test, designated pursuant to subsection (d) of this section, will result in the revocation of his or her license to operate a motor vehicle for a period of at least 45 days and up to life[.]