# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2017 Term**

_____

**No. 16-0132**
_____

**FILED**

**October 12, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PATRICIA S. REED,**
**Commissioner, Division of Motor Vehicles,**
**Petitioner**

**v.**

**GEORGE ZIPF,**
**Respondent**

_____

**Appeal from the Circuit Court of Kanawha County**
**The Honorable Jennifer F. Bailey, Judge**
**Civil Action No. 14-AA-113**

**REVERSED AND REMANDED**

_____

**Submitted: October 4, 2017**
**Filed: October 12, 2017**

Patrick Morrisey, Esq.                    William O. Merriman, Jr., Esq.
Attorney General                          Parkersburg, West Virginia
Janet E. James, Esq.                      Counsel for the Respondent
Senior Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

      1.    "A person who wishes to challenge official compliance with and adherence to sobriety checkpoint operational guidelines shall give written notice of that intent to the commissioner of motor vehicles prior to the administrative revocation hearing which is conducted pursuant to W.Va.Code § 17C–5A–2." *Carte v. Cline*, 194 W.Va. 233, 460 S.E.2d 48 (1995).

      2.    "In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C–5A–1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A–5–2(b) (1964) (Repl.Vol.2002)." *Crouch v. W.Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006).

**Justice Ketchum:**

George Zipf was arrested at a sobriety checkpoint for driving under the influence of alcohol.  Based on his arrest, the Department of Motor Vehicles [DMV] revoked his driver's license.  Mr. Zipf objected to his driver's license revocation, and he requested a hearing before the Office of Administrative Hearings [OAH].

The OAH rescinded Mr. Zipf's driver's license revocation because it found insufficient evidence that his DUI arrest was lawful.  After the DMV petitioned the circuit court for an appeal, the circuit court upheld the OAH's order.

We find that the circuit court erred in upholding the OAH's order because there was sufficient evidence that Mr. Zipf's DUI arrest was lawful.  Therefore, we reverse the circuit court and remand this case to the circuit court for reinstatement of the DMV's order revoking Mr. Zipf's driver's license.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On July 28, 2012, Mr. Zipf was stopped at a sobriety checkpoint conducted by the Vienna Police Department.  According to Mr. Zipf's DUI Information Sheet, the officer who stopped him, Officer D.W. Lindsey, observed an odor of an alcoholic beverage and that Mr. Zipf's speech was slurred.  Mr. Zipf was directed to exit his vehicle and walk to a separate area designated for field sobriety testing, which was conducted by another officer, J.A. Cole.

Officer Cole administered a series of field sobriety tests and a preliminary breath test on Mr. Zipf.  After Mr. Zipf failed all of these tests, Officer Cole arrested him

1

for DUI and transported him to the Vienna Police Department. At the police department, Mr. Zipf failed a breath test administered to him almost two hours after he was stopped at the checkpoint.

Based on his arrest, the DMV revoked Mr. Zipf's driver's license. He objected to the revocation and requested a hearing before the OAH. On his hearing request form, he marked that he wished to challenge the "Secondary chemical test of the blood, breath, or urine" and the "Sobriety checkpoint operational guidelines."

Two members of the Vienna Police Department testified at Mr. Zipf's OAH hearing: Sergeant K.L. Parrish, who supervised the sobriety checkpoint; and Officer Cole, who conducted the field sobriety tests on Mr. Zipf and arrested him. Officer Lindsey, who stopped Mr. Zipf at the sobriety checkpoint, was absent from the OAH hearing.

Sergeant Parrish testified as to the manner in which the Vienna Police Department conducted the sobriety checkpoint. For example, the location of the checkpoint was selected on the basis of traffic volume, accident data, alcohol-related arrests, and visibility to drivers and officers. Sergeant Parrish stated that the Vienna Police Department erected signs notifying drivers of the checkpoint, and if a driver did not wish to proceed through the checkpoint, he or she had opportunities to turn around and avoid the checkpoint without being pursued by an officer. As to drivers who proceeded through the checkpoint, officers were directed to stop every car to check for signs of impairment. Drivers who exhibited signs of impairment were to be detained for further investigation; everyone else was to be released as soon as possible.

2

Finally, Sergeant Parrish testified that he had a written copy of the sobriety checkpoint guidelines on his person while he was on the witness stand. Mr. Zipf never contested the correctness of Sergeant Parrish's testimony that the Vienna Police Department complied with its guidelines, presented evidence or argued that the guidelines were not followed in any way, or requested that he be allowed to review the guidelines.

Officer Cole testified regarding his interaction with Mr. Zipf leading up to the DUI arrest. He conducted a series of field sobriety tests after Officer Lindsey detected signs that Mr. Zipf may have been driving impaired. After Mr. Zipf failed all of these tests, Officer Cole arrested him for DUI, transported him to the Vienna Police Department, and at the police department, he administered a breath test. Mr. Zipf also failed the breath test.

In addition, Mr. Zipf's DUI Information Sheet was submitted into evidence. The DUI Information Sheet lists Officer Lindsey as a witness to Mr. Zipf's driving under the influence, and it states that Officer Lindsey observed "slurred speech" and "an odor of alcoholic beverages" coming from Mr. Zipf.

After the hearing, the OAH rescinded Mr. Zipf's driver's license revocation because it found insufficient evidence that his DUI arrest was lawful. The OAH based its decision on two grounds: (1) the sobriety checkpoint guidelines were not submitted into evidence; and (2) the officer who stopped Mr. Zipf did not testify at the OAH hearing on why he suspected Mr. Zipf drove under the influence of alcohol.

The DMV filed a petition with the circuit court to appeal the OAH order. The circuit court denied the DMV's petition, upheld the OAH's order, and adopted the OAH's reasoning on whether there was sufficient evidence that Mr. Zipf's arrest was lawful. The DMV now appeals the circuit court's order denying its petition for appeal.

## II.
## STANDARD OF REVIEW

We are asked to review a circuit court order affirming an administrative decision by the OAH. We have held:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and review questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.[1]

## III.
## ANALYSIS

The circuit court found insufficient evidence that Mr. Zipf's DUI arrest was lawful because: (a) the sobriety checkpoint guidelines were not submitted into evidence; and (b) the officer who stopped Mr. Zipf did not testify on why he suspected Mr. Zipf had been driving under the influence.

---

[1] Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

4

## A.  *The sobriety checkpoint guidelines*

The DMV argues that the circuit court erred by finding that it was required to submit the sobriety checkpoint guidelines into evidence in order to show that Mr. Zipf's arrest was lawful.  In its order, the circuit court stated, "in a case where the validity of a sobriety checkpoint has been challenged, the written regulations themselves should be submitted into evidence."  The circuit court did not address Mr. Zipf's failure to challenge the validity of the sobriety checkpoint.

The DMV acknowledges that Mr. Zipf provided the DMV with prehearing, written notice that he intended to challenge the sobriety checkpoint guidelines, but it asserts he did not follow through on his stated intent by making this challenge at his OAH hearing.  The DMV presented testimony by Sergeant Parrish, who supervised the checkpoint at which Mr. Zipf was arrested.  Sergeant Parrish testified in detail regarding Vienna Police Department's compliance with its sobriety checkpoint guidelines, including the selection of its location, advance notice of the checkpoint to the public, and how officers were instructed to interact with drivers.  Mr. Zipf did not contest the correctness of Sergeant Parrish's testimony that the Vienna Police Department complied with its guidelines, present argument or argue that the guidelines were not complied with in any way, or request that he be allowed to review the guidelines.  Because of Mr. Zipf's silence on this subject, the DMV argues that the guidelines were not necessary to resolve any issue that Mr. Zipf disputed at his hearing, and they were not required to be submitted into evidence.

5

The DMV was not required to submit the sobriety checkpoint guidelines into evidence merely because Mr. Zipf provided prehearing notice that he intended to challenge the guidelines. In *Carte v. Cline*,[2] we addressed how notice of a driver's intent to challenge sobriety checkpoint guidelines affects the DMV's burden at a driver's license revocation hearing:

> [A] more viable and preferable alternative is to require a person who wishes to challenge official compliance with and adherence to sobriety checkpoint operational guidelines to give written notice of that intent to the commissioner of motor vehicles prior to the administrative revocation hearing[.] . . . The State is thereby afforded an opportunity to have the appropriate law enforcement officers *present testimony or other evidence* of compliance with standard operating procedures when noncompliance is alleged by the person whose license has been revoked.[3]

In *Carte*, where the driver asserted that officers did not comply with sobriety checkpoint guidelines, we found insufficient evidence of compliance because no officer at the OAH hearing was able to fully testify on that subject, and the DMV presented no other evidence on that issue.[4]

---

[2] 194 W.Va. 233, 460 S.E.2d 48 (1995).

[3] *Carte*, 194 W.Va. at 239, 460 S.E.2d at 48 (emphasis and footnote added). In accordance with our *Carte* Opinion, the OAH promulgated an administrative rule requiring drivers who intend to challenge compliance with sobriety checkpoint guidelines to provide the DMV notice of his or her intent, or else the challenge is waived. W.Va. Code R. § 105-1-10.2(c)

[4] *Carte*, 194 W.Va. at 238-39, 460 S.E.2d at 53-54.

6

Clearly then, the DMV must be prepared to present testimony *or* other evidence of compliance with sobriety checkpoint guidelines when a driver provides the DMV with timely, written and otherwise proper notice that he or she intends to challenge the sobriety checkpoint guidelines. But we have never said that the DMV is required to present *both* testimony *and* documentary evidence, such as the written guidelines, merely because a driver notifies the DMV he or she may challenge the sobriety checkpoint guidelines at the OAH hearing.

Here, the DMV presented testimony by Sergeant Parrish, who oversaw the sobriety checkpoint at which Mr. Zipf was arrested. Sergeant Parrish testified in detail regarding his police department's compliance with its sobriety checkpoint guidelines, including the location of the checkpoint, advance notice to the public, and how officers were to interact with drivers. Therefore, the DMV satisfied its burden under *Carte* to be prepared to submit testimony or other evidence on Vienna Police Department's compliance with its sobriety checkpoint guidelines on the night of Mr. Zipf's arrest.

The only case, revealed by this Court's research, wherein we required that the sobriety checkpoint guidelines be submitted into evidence at a driver's license revocation hearing is *White v. Miller*.[5] In that case, the driver repeatedly requested the sobriety checkpoint guidelines for his review, and he disputed the correctness of the

---

[5] 228 W.Va. 797, 724 S.E.2d 768 (2012).

officer's testimony that his police department conducted its sobriety checkpoint in compliance with the guidelines.[6] As we observed:

> One matter in controversy during the administrative hearing, for example, was whether Sergeant Williams' email to the media concerning the MacCorkle Avenue checkpoint sufficiently alerted motorists in compliance with police guidelines, that the designated alternative route would be along Kanawha Boulevard. Without the standardized, predetermined guidelines, such issues cannot be resolved. Therefore, the finding of the Commissioner that Sergeant Williams set up the checkpoint in accordance with the standardized guidelines is clearly wrong.[7]

Thus, our holding in *White* hinged on the fact that the sobriety checkpoint guidelines were necessary to resolve issues that the driver disputed at his OAH hearing.

We decline to extend our holding in *White* to this case, where Mr. Zipf did not contest the correctness of Sergeant Parrish's testimony that the Vienna Police Department complied with its guidelines, present evidence or argue that the guidelines were not followed in any way, or request that he be allowed to review the guidelines. Simply, the sobriety checkpoint guidelines were not necessary to resolve any issue that Mr. Zipf put into issue at his OAH hearing. Therefore, the sobriety checkpoint guidelines were not required to be submitted into evidence to show that Mr. Zipf's DUI arrest was lawful. The circuit court erred by finding otherwise.

---

[6] *White*, 228 W.Va. at 807-08, 724 S.E.2d at 778-79.

[7] *White*, 229 W.Va. at 808, 724 S.E.2d at 779.

## B. The testimony of the officer who stopped Mr. Zipf

The circuit court also found insufficient evidence that Mr. Zipf's arrest was lawful because there was "an absence of any information as to what criteria Officer Lindsey [the stopping officer] utilized in determining that [Mr. Zipf] should be detained for further investigation."

Despite the circuit court's assertion, Mr. Zipf's DUI Information Sheet was part of the record before the OAH, and it revealed that Officer Lindsey observed "slurred speech" and an "odor of alcoholic beverages" coming from Mr. Zipf. On the admission of a DUI Information Sheet as evidence in a driver's license revocation hearing, we have held:

> In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer as described in W.Va. Code § 17C-5A-1(b) (2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W.Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002).[8]

In a similar case, *Dale v. Odum*,[9] the driver argued that the stopping officer was required to testify at his OAH hearing, even though the stopping officer's observations were recorded on the DUI Information Sheet. We rejected this argument, stating:

---

[8] Syl. Pt. 3, *Crouch v. W.Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006).

[9] 233 W.Va. 601, 760 S.E.2d 415 (2014).

9

Although there was no testimonial evidence [by the stopping officer] . . . our review of the record shows that documentary evidence was submitted during the hearing that established that the stop of Mr. Doyle's vehicle by Officer Anderson was valid. In that regard, the statement of the arresting officer/DUI Information Sheet, which was made part of the record, indicated that Mr. Doyle's vehicle was stopped because of "Failure to Obey Traffic Control Device." . . . .Consequently, there was unrebutted evidence admitting during the administrative hearing that established a valid stop of Mr. Doyle's vehicle, and the hearing examiner's finding to the contrary was clearly wrong.[10]

We find no meaningful distinction between this case and *Dale*. Therefore, it was error to rescind the revocation of Mr. Zipf's driver's license because the officer who stopped him did not testify at the OAH hearing.

## IV.
## CONCLUSION

The circuit court erred by finding that the sobriety checkpoint guidelines and the stopping officer's testimony were required to show that Mr. Zipf's DUI arrest was lawful. Mr. Zipf did not contest the correctness of Sergeant Parrish's testimony that the Vienna Police Department complied with its sobriety checkpoint guidelines, present evidence or argue that the guidelines were not followed in any way, or request that he be allowed to review the guidelines. In addition, the reasons the stopping officer suspected that Mr. Zipf drove under the influence were in Mr. Zipf's DUI Information Sheet, which

---

[10] *Dale*, 233 W.Va. at 608, 760 S.E.2d at 422.

was in the record before the OAH.  We reverse the circuit court and remand this case to the circuit court to reinstate the DMV order revoking Mr. Zipf's driver's license.

Reversed and Remanded.