IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0223

_____

FILED

**November 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, Commissioner,
West Virginia Division of Motor Vehicles,
Respondent Below, Petitioner,

v.

JAD H. RAMADAN,
Petitioner Below, Respondent.

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Phillip D. Gaujot, Judge
Civil Action No. 19-AA-3

REVERSED AND REMANDED
WITH DIRECTIONS

_____

Submitted:  September 27, 2023
Filed:  November 6, 2023

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Charles C. Wise III, Esq.
Jordan C. Maddy, Esq.
Bowles Rice LLP
Morgantown, West Virginia
Counsel for the Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

2.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.      "Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo."  Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

4.      "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol."  Syl. Pt. 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

5.      "A person is 'under the influence' if the person (1) consumed, used, took, or ingested alcohol, controlled substances, or drugs and (2) the alcohol, controlled substances, drugs, or any combination thereof impaired the person's ability to operate a motor vehicle with ordinary care."  Syl. Pt. 4, *Casto v. Frazier*, 248 W. Va. 554, 889 S.E.2d 276 (2023).

6. "There are no provisions in either W. Va. Code, 17C-5-1 (1981), *et seq.*, or W. Va. Code, 17C-5A-1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license." Syl. Pt. 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

**WOOTON, Justice:**

The petitioner Everett J. Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), appeals the final order of the Circuit Court of Monongalia County, West Virginia, which reversed the final order of the Office of Administrative Hearings ("OAH") entered on March 1, 2022, upholding the respondent Jad H. Ramadan's administrative driver's license revocation for a period of five years for driving under the influence ("DUI"). On appeal, the DMV argues that the court: 1) erred as a matter of law by extending the presumptions contained in West Virginia Code section 17C-5-8(b)(l) (2021), a statute which applies solely to impairment by alcohol, to impairment by controlled substances and/or drugs;[1] 2) abused its discretion by substituting

---

[1] We recently rejected this assigned error raised by the DMV in *Casto v. Frazier*, 248 W. Va. 554, 889 S.E.2d 276 (2023), as follows:

> The OAH then discounted the results of Mr. Casto's secondary chemical test because it construed the secondary chemical test statute as applying predominantly to tests designed to detect alcohol and not to those identifying evidence of drug use. *See* W. Va. Code § 17C-5-8. While this statute provides specific percentages for the consideration of alcohol evidence, it also lists the various drugs and controlled substances for which a chemical analysis of the blood should test. *See* W. Va. Code §§ 17C-5-8(d)(1) to -(10). Therefore, the OAH should not have discounted Mr. Casto's blood test results solely based on this statute.

*Casto*, 248 S.E.2d at ___, 889 S.E.2d at 282. We decline to find any reversible error in regard to this assigned error based on our prior resolution of this very issue in *Casto*. *See id*.

1

its judgment for that of the fact finder below (the OAH) regarding the weight given to the results of the standardized field sobriety tests; and 3) abused its discretion by substituting its judgment for that of the fact finder below (the OAH) regarding the credibility of the respondent's expert witness. Based upon our review of the parties' briefs and oral arguments, the applicable law, the appendix record, and all other matters submitted before the Court, we find the court erred in substituting its judgment for that of the OAH in regard to the weight given to the field sobriety tests and the credibility of the respondent's expert. Accordingly, we reverse the court's decision and remand this case to the court for entry of an order reinstating the OAH's order upholding the administrative revocation of the respondent's driver's license.

## I. Facts and Procedural Background

On July 9, 2015, during a heavy rainstorm, the respondent was driving his vehicle in Morgantown, West Virginia, when he collided with the rear end of the vehicle in front of him. Detective John Wilhelm, an off-duty sheriff's deputy with the Monongalia County Sheriff's Department, testified at the OAH hearing that he was travelling home when he came upon the accident and stopped his vehicle behind the two vehicles involved in the crash. He was the first law-enforcement officer to arrive on the scene of the accident and observed the respondent staggering. The detective asked the respondent to lean on the detective's car so that the respondent wouldn't fall. Det. Wilhelm testified that he spoke with the respondent and noted that the respondent's speech was slurred. The detective also stated that he noticed the respondent had mud on his clothing; the respondent told him that

2

he had fallen down a couple of times. The detective testified that he believed that the respondent was impaired.

Two West Virginia State Police officers responded to the accident scene – then-Trooper C.M. Griffith, who was the investigating officer, and Senior Trooper S.W. Scholobohm, who was the assisting officer. Both state troopers testified at the OAH hearing that the respondent had difficulty standing, his speech was slurred and incoherent, his eyes were droopy, and his pupils were dilated. According to Trooper Griffith, the respondent told her that he had taken Suboxone that had been prescribed for him the prior evening and "he kept saying something about having taken Ambien and Xanax[.]"[2]

Due to heavy rain at the time of the accident, the respondent was transported to a nearby bank drive-through that was covered by a roof so that field sobriety tests could be administered. Trooper Griffith testified that she observed as Trooper Scholobohm administered the field sobriety tests, which included the horizontal gaze nystagmus test ("HGN test"), the walk-and-turn test, and the one-leg stand test. The respondent failed each test. Based on the troopers' observations and the results of the field sobriety tests, the respondent was asked to (and did) submit to a preliminary breath test. Trooper Scholobohm testified that the result of that test was a 0.00% blood alcohol concentration.

_____

[2] The respondent testified that he never told the officers that he had taken either Xanax or Ambien.

3

The trooper stated that the respondent was placed under arrest for DUI and transported to Ruby Memorial Hospital so that a blood test could be performed.[3]

After the respondent's blood test was complete, he was transported to the West Virginia State Police Barracks for processing and a secondary chemical breath test was conducted. The results of this test also indicated that the respondent had a 0.00% blood alcohol concentration.

Mr. Ramadan testified that on July 9, 2015 – the night of the accident – he was "in a state of panic getting pulled over again," he had not been sleeping well, he suffered from a lot of anxiety, and he had trouble focusing. He denied that he was impaired due to controlled substances but admitted to taking prescribed Suboxone the night before

---

[3] Trooper Griffith sent the blood specimen to the West Virginia State Police Laboratory for analysis, with a "Forensic Laboratory Case Submission Form" requesting that the respondent's blood specimen be tested for "Toxicology, Suspected Suboxone, Xanax[.]" There is no explanation in the appendix record as to why the respondent's blood was only tested for Xanax and Ambien. The test results failed to show the presence of any of the substances tested for in the respondent's blood. The OAH found:

> [T]he West Virginia State Police laboratory sent the [respondent's] blood specimens to NMS Laboratory in Pennsylvania for analysis, the results of which revealed that alprazolam [(Xanax)] and zolpidem [(Ambien)] were not present in the [respondent's] blood specimens at or above their reporting limits. The laboratory conducted no testing to ascertain whether [S]uboxone was present.

4

the accident.[4]  Also, he acknowledged that he had a DUI on June 8, 2015,[5] one month prior to the accident.[6]

Rodney Richmond, who had a degree in pharmacy and served as Director of the Center for Drug Information at Harding University in Arkansas, testified as an expert witness on the respondent's behalf.[7]  Mr. Richmond testified that there were no positive

---

[4] The respondent stated that he was prescribed four milligrams of Suboxone which he took every day at 10:00 p.m.

[5] The respondent testified that he had relapsed by taking Xanax that he obtained from a friend "on the street."

[6] The respondent testified that after the July, 2015 accident, he was prescribed an anti-anxiety medication, Vistaril, but never took any of the medication.  He also stated that after the accident he went into an inpatient treatment facility for seventy-seven days to get better, then moved into a Sober Living Facility for a period of eight months after completing his inpatient treatment.  Once the respondent left the second facility, he spent six months on home confinement due to his "DUIs."

[7] During oral argument before this Court the DMV's counsel contended that Mr. Richmond "was never qualified as an expert witness at the administrative hearing." However, the appendix record does not support, and indeed actually contradicts the DMV's argument, to wit:

> Q:  [By the respondent's counsel]:  In the course[sic] that you have appeared, have you ever been denied qualification as an expert?
>
> A:  [By Mr. Richmond]:  No, I have not.
>
> Q:  Okay.  Rodney, I'm going to ask Mr. Dragisich [the DMV's counsel] if he has any questions as far as your qualification in this case to render an opinion as an expert, . . . .

5

findings with respect to any drugs or controlled substances that were tested from the toxicology report. Further, although he stated, inter alia, that Suboxone did not cause nystagmus, he agreed that this drug was not in the panel of drugs which were subject to the test.

The OAH found that

> [w]hile [the respondent] denied having ingested any alprazolam or zolpidem and sought to attribute manifestations of impairment he exhibited to insomnia, anxiety, lack of focus, racing thoughts, irritability, stress, fatigue, nervousness, and confusion, it is most difficult under any line of reasoning to accept the assertion that the myriad of indicia of impairment the Petitioner exhibited contemporaneous with the motor vehicle accident were completely unrelated to ingestion of controlled substances and/or drugs.

-------------------

> . . . .

> ATTORNEY DRAGISICH:      Is there a particular opinion he's going to be offering that's before I --- so I don't have to drag on any Cross Examination?  Is there . . . a particular opinion he's offering of what you're asking him to be considered as an expert for?

Moreover, the DMV failed to assign as error the respondent's failure to move for the witness to be qualified as an expert. Significantly, and troublingly, the contention that the witness was not properly qualified as an expert was never raised until oral argument before this Court. Given the DMV's failure to assign this as error, and the sudden and inexplicable appearance of this contention during oral argument, we decline to consider the DMV's argument regarding the expert witness qualification. *See Argus Energy, LLC v. Marenko*, ___ W. Va. ___, ___, 887 S.E.2d 223, 228-29 (2023) (footnotes omitted) ("appellate courts generally do not consider issues or arguments raised for the first time in oral argument because such issues or arguments are waived by failure to include them in the appellate brief."); *see also* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the brief on appeal may be deemed by this Court to be waived.").

6

The OAH also summarized what it found to be the relevant portions of Mr. Richmond's testimony; however, it gave little weight to the testimony,[8] finding:

> Mr. Richmond's testimony was based upon specific prescribed dosages of these controlled substances, whereas there is nothing in the record to verify that the [respondent] ingested any of the specific dosages that he mentioned. To the contrary, from the [respondent's] statements that the Investigating Officer documented, he advised them that he had ingested [S]uboxone about 10:00 p.m. the previous night, had also ingested some unknown but relatively small amounts of [A]lprazolam and [Z]olpidem earlier, and did not understand why they would be affecting him.

Even though the OAH did not discuss Mr. Richmond's testimony that Suboxone does not cause horizontal gaze nystagmus, it did consider the respondent's documentary evidence contained in "Petitioner's Exhibit 3," entitled "Appendix to Validation of the Standardized Field Sobriety Test Battery at BACs Below 0.10 Percent." The OAH noted that in the exhibit, the authors acknowledged that horizontal gaze nystagmus "'may also indicate consumption of seizure medication, phencyclidine, a variety of inhalants, barbiturates, and other depressants.'" The OAH found that this acknowledgement "establishes that horizontal gaze nystagmus is not only a phenomenon of alcohol use, but controlled substances and drugs as well." Further, the OAH found that "[t]he information in the

---

[8] The OAH should have made a specific finding in regard to the expert's credibility; however, when his testimony is considered in conjunction with all the evidence of record before the OAH it is discernable that the OAH found portions of the expert's testimony unreliable, as shown *infra*.

document also strongly implies that the standardized tests are effective in determining whether a driver is impaired by controlled substances or drugs, not just alcohol."

Based on the foregoing factual findings and in reliance on this Court's decision in *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984),[9] the OAH concluded as a matter of law that "[t]here is no requirement for the administration of a chemical sobriety test to prove that a motorist was driving while under the influence of alcohol or drugs for the purpose of making an administrative revocation of a driver's license." Ultimately, the OAH determined that "the record of this case, when considered in its entirety, is sufficient to prove the Petitioner drove a motor vehicle in the State while under the influence of controlled substances on July 9th, 2015. Accordingly, the order of revocation heretofore entered in this matter should be affirmed."

The respondent appealed the OAH's decision to the circuit court, arguing that the OAH had failed to give the proper weight to the secondary chemical tests, which were negative, and failed to properly credit his expert's evidence. A hearing was held on February 1, 2022, and the court's final order was entered on March 1, 2022. The court found that the secondary chemical test of blood, as well as the secondary chemical test of breath failed to detect any alcohol, controlled substances, and/or drugs in the respondent's system. The court found that "*the only evidence*" of the respondent's drug consumption

---

[9] The *Albrecht* opinion is discussed *infra* in greater detail.

8

was his admission that he ingested Suboxone, as prescribed, the evening prior to the incident. However, the DMV failed to test for Suboxone and the respondent testified that he does not experience dizziness or fatigue while taking it. The court noted that there were "numerous explanations" for the respondent's performance during the field sobriety tests, including his anxiety, that he had just been involved in a traffic accident, that the traffic was passing him on both sides of the intersection, that he was transported to a different location due to the rain, that there were at least three police officers involved, and that there was no baseline with which to compare his performance. The court found that the OAH improperly weighed the results of the field sobriety tests against the negative findings of the secondary chemical tests, as well as the explanations for the respondent's performance during the field sobriety tests. The court also found that the respondent's expert's "unrebutted testimony" supported the negative findings of the secondary chemical test and "debunked the results of the HGN Test by testifying that Suboxone does not cause nystagmus, which the OAH failed to mention in its Final Order." Thus, the court concluded, the OAH "clearly erred" in its failure to give "proper weight" to negative chemical test results and to "properly credit" the respondent's expert's testimony. The DMV appeals.

## II. Standard of Review

The West Virginia Administrative Procedures Act governs the scope of judicial review by the circuit court and this Court. *See generally* W. Va. Code § 29A-5-4 (2023). Regarding the nature of the circuit court's review, we have held:

9

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). This same standard also applies to this Court's review:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). In other words,

[s]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

10

Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437

(2000). As we recently stated:

> "We must uphold any of the [Administrative Law Judge's] ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record." *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995). When reviewing these cases,
>
> > [w]e cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. . . . Whether or not the ALJ came to the best conclusion, however, she was the right person to make the decision. An appellate court may not set aside the factfinder's resolution of a swearing match unless one of the witnesses testified to something physically impossible or inconsistent with contemporary documents. . . . The ALJ is entitled to credit the testimony of those it finds more likely to be correct.
>
> *Id*. at 306, 465 S.E.2d at 408 (internal citations and quotations omitted).

*Frazier v. S.P.*, 242 W. Va. 657, 664, 838 S.E.2d 741, 748 (2020). With the forgoing in

mind, we address the issues before us.

## III. Discussion

The DMV argues that the circuit court erred in substituting its judgment for

that of the factfinder, the OAH, in two areas: 1) the weight given by the OAH to the

11

standardized field sobriety tests; and 2) the credibility it afforded the respondent's expert's testimony. The DMV contends that the court then used its own findings, rather than those of the OAH, to justify reversing the respondent's license revocation. Conversely, the respondent argues that the court correctly found that the OAH erred in revoking his license because "secondary chemical tests of his breath and blood were performed which conclusively show that he could not have been impaired due to alcohol or drugs," as those test results demonstrated a complete absence of alcohol or controlled substances, and correctly found that the OAH erred in ignoring the substance of his expert's testimony, which also supported the lack of a sufficient amount of any controlled substances in his system that would have impaired his ability to drive.

Our review of whether the evidence was properly considered by the circuit court requires us to consider whether appropriate deference was given to the factual findings and credibility determinations made by the OAH. *See id.* In this regard, our well-established precedent governing any decision by the OAH upholding an administrative license revocation provides:

> Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

Syl. Pt. 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984); *accord Reed v. Hill*, Syl. Pt. 5, 235 W. Va. 1, 770 S.E.2d 501 (2015); Syl. Pt. 6, *Frazier v. Bragg*, 244 W. Va.

12

40, 851 S.E.2d 486 (2020). In a similar vein, this Court most recently held in syllabus point four of *Casto v. Frazier*, 248 W. Va. 554, 889 S.E.2d 276 (2023), that the DMV must prove the following by a preponderance of the evidence:[10] "A person is 'under the influence' if the person (1) consumed, used, took, or ingested alcohol, controlled substances, or drugs and (2) the alcohol, controlled substances, drugs, or any combination thereof impaired the person's ability to operate a motor vehicle with ordinary care." *Id*. at ___, 889 S.E.2d at 278, Syl. Pt. 4.

It has long been recognized that

> [t]here are no provisions in either W. Va. Code, 17C-5-1 (1981), *et seq*., or W. Va. Code, 17C-5A-1 (1981), *et seq*., that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

*Albrecht*, 173 W. Va. at 269-70, 314 S.E.2d at 861, Syl. Pt. 1; *accord* Syl. Pt. 4, *Coll v. Cline*, 202 W. Va. 599, 505 S.E.2d 662 (1998) ("There are no provisions in either W. Va. Code, 17C-5-1, *et seq*., or W. Va. Code, 17C-5A-1, *et seq*., that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence

---

[10] *See Frazier v. Gaither*, 248 W. Va. 420, ___ 888 S.E.2d 920, 924-25 (2023) (providing that "[t]he DMV has the burden of proof in such cases and must prove these facts by a preponderance of the evidence to support an administrative license revocation for driving under the influence. *See also White v. Miller*, 228 W. Va. 797, 802, 724 S.E.2d 768, 773 (2012) (recognizing that 'preponderance of the evidence standard pertain[s] to administrative revocation proceedings')."(footnotes omitted).).

of alcohol, controlled substances or drugs for purposes of making an administrative revocation of his or her driver's license.").

### A. Field Sobriety Tests Results

Turning to the field sobriety tests, we first examine whether the OAH erred in the weight it gave to the standard field sobriety test results as opposed to the blood test, a question that must be viewed in the context of all the evidence presented. In this regard the OAH considered the respondent's admission to consuming Suboxone, Ambien, and Xanax in conjunction with his attempt to explain why he showed indicia of impairment on the night he rear-ended a vehicle. The OAH found the respondent's admissions to ingesting or consuming the above-mentioned controlled substances to be credible, yet did not find credible his testimony that he took the prescribed amount of Suboxone the night before the accident, noting that there was "nothing in the record to verify that the [respondent] ingested any of the specific dosages that he mentioned." The OAH also considered the testimony of three officers who were on the scene of the accident. Each officer testified that the respondent was staggering, admitted to having fallen twice, had slurred speech, had difficulty following the troopers' instructions, had to lean on a vehicle to keep from falling, had droopy eyes, and had dilated pupils. In the OAH's consideration of all of the evidence, it obviously placed greater weight on the standard field sobriety tests and the observations of three trained law-enforcement officers, because, as it concluded, "it was most difficult, under any line of reasoning, to accept the assertion that the myriad of indicia of impairment the [respondent] exhibited contemporaneous with the motor vehicle accident

14

were completely unrelated to ingestion of controlled substances and/or drugs." On this record we conclude that the OAH was justified in giving greater weight to the respondent's admission to taking controlled substances or drugs, together with the law-enforcement officers' testimony as to the respondent's physical impairment and his failure to pass any of the standard field sobriety tests, than it did to the negative results of the secondary chemical breath tests and blood test. Determining the weight of the evidence and making factual findings are clearly within the OAH's purview, so long as such determinations and findings are supported by the evidence – as they were in this case. *See Frazier*, 242 W. Va. at 664, 838 S.E.2d at 748.

Rather than review whether the OAH's factual findings were supported by a preponderance of the evidence, the circuit court second-guessed the OAH's credibility determinations and its determination of the appropriate weight to be given each parties' evidence. More particularly, the court focused its attention on the secondary chemical blood test and the secondary chemical breath test, both of which failed to show the presence of any alcohol, controlled substances, and/or drugs in the petitioner's system. In addition, the court found credible the petitioner's explanations for his poor performance during the field sobriety tests and determined that the OAH had improperly relied on the field sobriety tests rather than the secondary chemical test "without adequate discussion." The court ultimately determined that the OAH "improperly weighed the results of the field sobriety tests against the negative findings of the secondary chemical tests as well as the aforesaid explanations for [the respondent's] performance during the field sobriety tests." In other

15

words, the court substituted its judgment for the factual findings and credibility determinations of the OAH.

In *Casto*, we recently addressed a situation wherein a driver failed field sobriety tests (the one-leg stand test and the walk-and-turn test) but had negative secondary chemical and blood test results. *See* 248 W. Va. at ___, 889 S.E.2d at 278. In that case, the driver, Mr. Casto, was observed by a patrolman with the Charleston Police Department parking diagonally across multiple spaces in a convenience store parking lot. *Id*. When he exited his vehicle, Mr. Casto appeared unsteady, and he left his vehicle running while he went into the convenience store. Mr. Casto exited the store, at which point, the police officer approached him and began to investigate whether he had been DUI. *Id*. Mr. Casto denied having consumed or ingested any alcohol, drugs, or controlled substances, and there was "no odor indicating drug use" or evidence of drugs or controlled substances reported. *Id*. at ___, 889 S.E.2d at 284. The preliminary breath test performed on Mr. Casto showed no alcohol present in his system. Even though the officer noted that Mr. Casto's eyes were bloodshot, there was no evidence of impairment when the nystagmus test was performed. The patrolman stated that Mr. Casto performed the one-leg stand test incorrectly and had difficulties with the walk-and-turn test. Mr. Casto agreed to submit to a blood test. The sample was subjected to a ninety-panel screen, which was negative for all the tested substances. *Id*. at 278-79. Despite the negative blood test and Mr. Casto's denial of having consumed or ingested any alcohol, drugs, or controlled substances, his driver's license was administratively revoked for DUI based on the results of the standard field sobriety tests

16

and the patrolman's observations. *Id.* The license revocation was upheld by both the OAH and the circuit court, and Mr. Casto appealed. *Id.*

In reversing and remanding both the OAH's and the circuit court's decision to uphold the license revocation, we explained that

> [a] finding of driving under the influence of drugs or controlled substances necessarily requires a driver to be impaired as a result of his use or consumption of drugs or controlled substances. *The record in this case does not support a finding that Mr. Casto took or ingested drugs or controlled substances because the DMV offered no evidence that he used, consumed, ingested, or took controlled substances or drugs.* As such, the DMV failed to carry its burden to prove, by a preponderance of the evidence, that Mr. Casto drove under the influence of drugs or controlled substances. Consequently, his license revocation must be reversed. *See generally Frazier v. Gaither*, 248 W. Va. 420, 888 S.E.2d 920 (2023) (recognizing DMV's preponderance of the evidence burden of proof in license revocation cases). The OAH's finding that the evidence supported the revocation of Mr. Casto's driver's license for driving under the influence of drugs or controlled substances *is not substantiated by the record evidence*, and the circuit court erred by affirming the OAH's determination that Mr. Casto's license revocation was proper. *See* Syl. pt. 1, *Francis O. Day Co., Inc. v. Dir., Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994) ("Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." (emphasis added)). Therefore, we reverse the circuit court's order upholding Mr. Casto's license revocation and remand for entry of an order rescinding Mr. Casto's revocation and reinstating his driver's license.

248 W. Va. at ___, 889 S.E.2d at 284-85.

17

There is a key factual distinction between the facts in *Casto* and those in this case. Here, the respondent admitted to ingesting Suboxone prior to the accident, and the troopers testified that he also admitted to taking both Xanax and Ambien. In contrast, Mr. Casto denied ingesting any alcohol, controlled substances, or drugs, and there was no contradictory evidence.

Notwithstanding this factual distinction, this Court's (and the circuit court's) review of the evidence is the same as in any other case of this nature; we must "uphold any of the . . . [OAH's] factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts," *see S.P.*, 242 W. Va. at 664, 838 S.E.2d at 748 (citation omitted), so long as those findings are not "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record." *See* W. Va. Code § 29-5-4(g)(5); *Muscatell*, 196 W. Va. at 590, 474 S.E.2d at 520, Syl. Pt. 1. Accordingly, we proceed to determine whether the record as a whole supported the OAH's factual determination that the respondent ingested or consumed alcohol, controlled substances, or drugs that impaired his ability to operate a motor vehicle. *See Casto*, 248 W. Va. at ___, 889 S.E.2d at 277, Syl. Pt. 4. As we recognized in *Casto*, our law

> require[s] a finding that a driver actually used or ingested a substance that would impair his ability to operate a motor vehicle, either from actual consumption, as noted in *Albrecht*,[11] or from an admission of consumption or an odor, as referenced

---

[11] *See Albrecht*, 173 W. Va. at 269, 314 S.E.2d at 861 (the driver admitted to consuming two or three twelve-ounce bottles of beer before the accident).

18

in *White*.[12] In other words, the evidence to support a license revocation for driving under the influence of drugs or controlled substances must show both ingestion of the referenced substances and that the driver was impaired as a result of such use.

*Id.* at ___, 889 S.E.2d at 283 & Syl. Pt. 4 (footnotes added).

The OAH's factual determination that the petitioner proved by a preponderance of the evidence that the respondent had ingested controlled substances which impaired his ability to operate a motor vehicle is entitled to substantial deference. The evidence in this case – the respondent's admission to taking controlled substances, the observations of the three trained law-enforcement officers, and the failed field sobriety tests – support that factual determination. Accordingly, we find that the circuit court erred in substituting its judgment for the factual determination of the OAH, and then using its determination as a basis for overturning the OAH's decision to uphold the respondent's administrative license revocation.

## B. Expert Witness's Credibility

We easily find that the circuit court erred in finding that the OAH failed to "properly credit the substance of Mr. Richmond's testimony, which supports the negative findings of the secondary chemical test of blood." Our review of the appendix record

---

[12] *See White* 228 W. Va. at 800, 724 S.E.2d at 771 (the driver admitted consuming four beers over an hour and a half period and there was an odor of alcoholic beverage on his breath).

shows that the OAH reviewed the documentary evidence as well as the expert witness's testimony in making its credibility determination. In contrast, the court simply reassessed the expert's testimony and weighed his credibility differently, focusing on his emphasis as to the lack of positive findings for the controlled substances that were tested, as well as the expert's testimony about the "half-life" or amount of time a drug stays in a person's system for Xanax and Ambien, and his opinion as to whether the controlled substance Suboxone can cause a nystagmus. The court determined that the OAH "failed to properly credit" the expert's testimony, without any explanation as to how or why the OAH's credibility determination was without a basis in the evidence or was otherwise not entitled to deference. Our law is clear that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997); *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 465 S.E.2d 399 (1995) ("the ALJ's credibility determinations are binding unless patently without basis in the record."). Thus, we find that the court erred when it simply substituted its assessment of the expert's credibility for that of the OAH.

## IV. Conclusion

For the foregoing reasons, the circuit court's March 1, 2022, order is reversed and this case is remanded to the court for entry of an order consistent with this opinion.

Reversed and remanded
with directions.